[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Background
The petitioner, the Commissioner of the Department of Children and CT Page 9561 Families (DCF), brought petitions, dated November 20, 2001, alleging that the minor siblings Seth M and Elizabeth M (Liz) were neglected in that they were being denied proper care and attention and were being permitted to live under conditions or circumstances injurious to their well being. The Court appointed counsel to represent the respondent mother, Martha M, respondent father of Seth, John H, respondent father of Elizabeth, Edward F, and an attorney for both minor children.
On November 30, 2001, the respondent parents appeared with counsel, were advised by the Court, and denials to the allegations in the petition were entered by them. Thereafter, the matter was scheduled for trial before this Court for March 25, 2002, on the issues of neglect, and whereupon all parties appeared. The trial commenced on March 25th and continued on diver dates through the conclusion of the presentation of evidence and oral arguments on June 22, 2002, and the submission of elective final written arguments and rebuttal by July 3, 2002.
DCF alleges that Seth was sexually abused by an older brother Sterling; that Liz was sexually abused by her brother Seth, and that the respondents failed to adequately protect Seth and Liz from the abuse while they were living with the respondent mother. DCF bears the burden of establishing by a fair preponderance of the evidence that its allegations are true.
The Court heard and has carefully reviewed, considered and weighed the direct and cross examination testimony of all the witnesses, the exhibits and arguments of counsel and makes the following findings of fact.
 Factual Findings
On November 9, 2002, the respondent mother expressed concern to Monique Williams, a Family Services worker from the St. James Headstart program where Liz was enrolled, that another child in Liz's class at St. James had touched Liz in an inappropriate sexual way. When questioned by Ms. Williams, Liz said that Seth had "bad touched" her bottom and mouth. At no time did Liz ever state or indicate that anyone other than Seth had "bad touched" her.
DCF social worker, Melissa Riccelli, who was qualified at trial as an expert in investigating and interviewing allegations of sexually abused children, testified that she separately interviewed Liz and Seth on November 16, 2001. Liz told her that Seth had touched her butt and private parts under her underwear with his hands; the first time it happened Liz knew that it was wrong and ran into the kitchen and told her mother; respondent mother hit Seth on his back with a belt and said don't ever do that again. Liz said, "but he did do it again". CT Page 9562
When Ms. Riccelli later interviewed Seth, he initially denied touching anyone himself. After a while he said "maybe I did touch my sister". Seth said, "yeah mom was aware of it", she hit me and told me don't do it again. When Seth was asked by Ms. Riccelli whether anyone had ever touched him on his private parts, his testicles, he said "I think so" "I think Sterling did". Seth told Ms. Riccelli that he hoped and wanted to think that it was all "a bad dream".
DCF investigator Cynthia Bowman, previously met with respondent mother at her home on May 18, 2000. Seth had complained of anal pain and irritation. Mother was concerned that Sterling may have abused Seth. Seth had complained that in 1997 Sterling stuck his penis in his butt. A DCF service agreement was entered into with respondent mother. It required Seth to sleep with mother until Sterling vacated the home on May 19, 2000. On May 19th, Sterling was found to be still in the home.
On June 1, 2000, Ms. Bowman went to the home to investigate another referral. She found Sterling still there and alone with both Seth and Liz. Respondent mother for more than a year thereafter denied or minimized that Sterling sexually abused Seth. Furthermore, she initially refused to agree to not allow Sterling to baby sit Seth and Liz when she was not at home or to not allow him to have any unsupervised contact with them.
Upon a referral, because of complaints by Seth of anal discomfort and irritation, Dr. Berrien Frederick, who qualified as an expert in evaluating sexually abused children, examined Seth on May 17, 2000. Dr. Berrien's examination of Seth disclosed an abnormal finding: a dry area of irritation around Seth's anus which could have been scar tissue related to an externally caused prior trauma. The dry area was recent and not old and chronic.
There were also fissures, which Dr. Berrien believed to have gone back a couple of years. As a result of his exam Dr. Berrien was highly suspicious that Seth had been sexually abused. Seth's pain and difficulty in bowel movements were more likely than not the result of penetration due to sexual abuse. Dr. Berrien testified that respondent mother reported to him that Seth had previously told her that Sterling had put his penis in his butt and that it had happened years before.
 Adjudication
There is a preponderance of evidence that Seth was sexually abused by his brother Sterling and that Liz was sexually abused by her sibling Seth while they were in the care and custody of the respondent mother. Respondent CT Page 9563 mother in her argument submitted to the court has conceded that both Seth and Liz have been victims of sexual abuse but denies that she failed to adequately protect them.
The evidence clearly shows that respondent mother had knowledge by June 2000, that Sterling had sexually abused Seth, yet she denied it, minimized it, continued to use Sterling as a baby sitting resource for Seth and Liz, allowed Sterling to be alone with Seth in her home, and further asserted that she saw no reason why she had to supervise Sterling. Respondent mother failed to take reasonable and appropriate action to protect Seth from further sexual abuse. At a time when Seth most needed the committed support and protection of his mother she blamed him for Sterling having to move out of the house.
Liz told Ms. Riccelli on November 9, 2001, that it was Seth who had inappropriately touched her sexually. Both Liz and Seth said that respondent mother had known even before that about Seth inappropriately touching Liz. Liz told her mother about it the very first time it happened. Although she told him "don't it again", as Liz said, "but he did do it again". Mother was either unable or unwilling to protect either child from further abuse.
Based upon all of the foregoing, the Court finds that DCF has established by a fair preponderance of the evidence that the respondent mother not only knew that Seth and Liz were being sexually abused but also failed to protect them from the abuse and recurrences of it. Wherefore, the Court adjudicates both Seth M and Elizabeth M neglected on the grounds that they have both been denied proper care and attention and have been permitted to live under conditions and circumstances injurious to their well being.
 Disposition
The testimony by clinical psychologist, Dr. Bruce Freedman, established that respondent mother has a full scale I.Q. of 60, "which is the lowest end of the lowest end of functioning"; that she denied making reports that Sterling had abused Seth; that she let them continue sleeping together for months after the allegations of sexual abuse; that at times respondent mother was disorganized or poorly organized; that she lacks the ability to provide structure; that the children in fact lacked adequate structure; that her mental functioning in day to day life is widely up and down, from" good to dangerous;"that she can not make important decisions; and that while it is possible, it is not likely she could be a reliable parent in the near future, even with more services and medications, because they've been provided to her and they haven't worked to provide structure, organization, parenting skills or to control CT Page 9564 her impulsivity. .
The respondent father of Seth, John H, supports the respondent mother's position that Seth should be immediately returned home to her. He has made no request for custody of Seth and did not present any evidence to the Court to assist the Court with a disposition. The Court lacks sufficient knowledge and information to permit it find that it would be in Seth's best interest to be placed with his respondent father. Moreover, Seth's counsel supports DCF's position and advocated during her closing argument that it is in Seth's best interests to be committed to DCF.
Liz has been in placement by DCF with her respondent father, Edward F, under an order of temporary custody since December 26, 2001. Liz has done well in his home and at school since her placement there. The home is safe and appropriate. DCF and Liz's attorney agree that Mr. F is an appropriate and suitable person to have sole custody and guardianship of Liz. DCF has referred Liz for counseling services. It is in Liz's best interest to have these service if deemed appropriate for her. Moreover, Mr. F has been referred by DCF for individual counseling and parenting classes which are also in Liz's best interest for him to participate in and complete. To allow for these services to be provided to Liz and her Father a period of protective supervision is appropriate.
Accordingly, it is ordered that Seth M be and hereby is committed to the care and custody of DCF. Reunification efforts shall continue by DCF with the respondent mother. DCF is ordered to file a permanency plan by August 02, 2002, and a new permanency plan and motion to maintain or revoke the commitment of Seth by March 27, 2003.
It is also ordered that the custody and guardianship of Elizabeth M be and hereby is transferred to the respondent father, Edward F, under an order of protective supervision for six (6) months. This order of protective supervision shall expire on January 10, 2003.
An in-court review for both Seth and Elizabeth M is scheduled for 10:30 am, Thursday, December 05, 2002. Counsel are required to be present.
Dated at Hartford, Connecticut this 10th day of July 2002.
By the Court,
Turner, J. CT Page 9565